UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHIE CONNER, | : | CIVIL NO: 3:15-CV-00004 |
| | : | |
| Plaintiff | : | |
| | : | (Judge Caputo) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| WARDEN FCI SCHUYLKILL, *et al.* | : | |
| | : | |
| Defendants | : | |
| | : | |

## REPORT AND RECOMMENDATION

## I.  Introduction.

The plaintiff, Richie Conner, claims that the defendants violated the Eighth Amendment by failing to appropriately diagnose and then treat his bladder cancer and by assigning him to a landscaping job detail after he had surgery.  The defendants filed a motion to dismiss, or in the alternative, for summary judgment. Because the claims against the defendants in their official capacities are barred by the sovereign immunity of the United States and because Conner failed to exhaust available administrative remedies, we recommend that the motion be granted.

## II.  Background and Procedural History.

Although Conner is now a federal prisoner in Texas, he complains about events that happened while he was a prisoner at Federal Prison Camp Schuylkill (FPC Schuylkill).  He names as defendants former Warden Hufford, former Unit

Manager Petrucci, Physician's Assistant Ortiz, Case Manager Christeleit, former Corrrectional Counselor Kranzel, former Correctional Counselor Schreffler, and former Unit Secretary Lucas.[1]

Conner alleges in his amended complaint that in March of 2012, he noticed hematuria, i.e., blood in his urine, and he sought treatment from defendant Ortiz. Without examining Conner, Ortiz diagnosed him with kidney stones, and Ortiz did not prescribe any medication or provide any follow up treatment. According to Conner, his hematuria progressively increased, and he again sought treatment from Ortiz. This time, Ortiz told Conner that he was exercising too hard, and again Ortiz did not prescribe any medication or provide any follow up treatment. In May of 2012, Conner met with his unit team, which included defendants Petrucci, Christeleit, Kranzel, Schreffler, and Lucas. Although he complained about the lack of medical treatment for his worsening hematuria, the unit team declined to intervene on his behalf. Defendant Petrucci stated that he could not overrule defendant Ortiz's medical assessment that Conner did not have a serious condition. According to Conner, he then turned to the administrative-remedy process, and he asserts that he filed an administrative remedy and appealed the denial of such all the way to the Central Office.

---

[1] Although Conner spells the last names of a number of these defendants differently, we use the spellings of the defendants' last names provided by the defendants.

2

Conner alleges that in December of 2012, he was hemorrhaging severely and he was finally transported to a hospital, where he had surgery to remove what was determined to be cancer from his bladder. According to Conner, he is still waiting for a follow-up examination to determine whether his cancer has returned.

Conner alleges that in January of 2013, after his cancer surgery, on the advice of his surgeon, he began to walk the track at the prison. This purportedly angered defendant Petrucci, who demanded that defendant Ortiz lift Conner's "medically unassigned" status, thus clearing him for a work detail. While Ortiz initially declined, Petrucci ultimately prevailed and assigned Conner to a landscaping detail.

Conner claims that the defendants were deliberately indifferent to his serious medical needs, and thus, they violated his Eighth Amendment right to be free from cruel and unusual punishment. He is seeking compensatory and punitive damages from the defendants.

In August of 2015, the defendants filed a motion to dismiss, or in the alternative, for summary judgment. They also filed a brief in support of that motion as well as a statement of material facts and supporting documents. Although Conner was ordered to file, on or before September 21, 2015, a brief in opposition to the motion, a response to the defendants' statement of material facts, and relevant documents in accordance with Local Rules 7.6 and 56.1, he has not

filed anything in opposition to the defendants' motion.  Nor has he filed a motion for an extension of time to do so.

### III.  The Official Capacity Claims Are Barred by Sovereign Immunity.

The defendants contend that Conner's claims against them in their official capacities should be dismissed because they are barred by sovereign immunity.

Rule 12(b)(1) permits the dismissal of an action for lack of subject-matter jurisdiction.  Challenges to subject-matter jurisdiction under Fed.R.Civ.P. 12(b)(1) may be "facial" or "factual." *Turicentro, S.A. v. American Airlines, Inc.,* 303 F.3d 293, 300 n.4 (3d Cir. 2002).  A facial attack, such as the one presented by the defendants here, contests the sufficiency of the pleadings. *Id.*  In reviewing a facial attack, the court considers, in the light most favorable to the plaintiff, the allegations in the complaint and any documents referenced and attached to the complaint. *Gould Electronics, Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000).  "The plaintiff has the burden of persuasion to convince the court it has jurisdiction." *Id.* at 178.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *U.S. v. Mitchell,* 463 U.S. 206, 212 (1983).  "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471,

475 (1994). "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985) (quoting *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690 n. 55 (1978)). Thus, claims against the defendants in their official capacities are really claims against the United States and are barred absent a waiver of sovereign immunity.

Here, Conner is pursuing Eighth Amendment *Bivens*[2] claims. It is well-settled, however, that *Bivens* actions against the United States—and, by extension, against federal officials sued in their official capacity—are barred by sovereign immunity. *Tucker v. Sec'y of Health & Human Servs.*, 588 F. App'x 110, 115 (3d Cir. 2014)(concluding that "a *Bivens* action cannot be maintained against a federal official in her official capacity since such an action would essentially be one against the United States"); *Wilkerson v. Samuels*, No. 3:12-CV-1462, 2015 WL 1359113, at *8 (M.D. Pa. Mar. 24, 2015)(stating that "it is well established that a plaintiff may not sue to recover monetary damages against federal officials in their

---

[2] *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971). In *Bivens*, the Supreme Court recognized a private cause of action to recover damages against a federal agent for violations of constitutional rights. "A *Bivens* action, which is the federal equivalent of the [42 U.S.C.] § 1983 cause of action against state actors, will lie where the defendant has violated the plaintiff's rights under color of federal law." *Brown v. Philip Morris Inc.,* 250 F.3d 789, 800 (3d Cir. 2001).

official capacities because *Bivens* claims against the United States are barred by

sovereign immunity"), *aff'd on other grounds*, 614 F. App'x 599, 600 (3d Cir.

2015).  Thus, the Eighth Amendment *Bivens* claims against the defendants in their

official capacities should be dismissed because they are barred by the doctrine of

sovereign immunity.

## IV.  The Defendants are Entitled to Summary Judgment as to the Individual Capacity Claims Against Them.

The defendants contend that they are entitled to summary judgment because

Conner failed to exhaust available administrative remedies.

### A. Summary Judgment Standards.

The defendants moved for summary judgment under Rule 56(a) of the

Federal Rules of Civil Procedure, which provides that "[t]he court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).  "Through summary adjudication the court may dispose of those

claims that do not present a 'genuine dispute as to any material fact' and for which

a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v.*

*U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa.

2011)(quoting Fed.R.Civ.P. 56(a)).

6

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed.R.Civ.P. 56(c).  Summary judgment is appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will

7

properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248.  A

dispute about a material fact is genuine only if there is a sufficient evidentiary

basis that would allow a reasonable fact finder to return a verdict for the non-

moving party. *Id.* at 248-49.  When "faced with a summary judgment motion, the

court must view the facts 'in the light most favorable to the nonmoving party.'"

*N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir.

2011)(quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the

evidence or to determine the truth of the matter; rather it is to determine whether

there is a genuine issue for trial. *Anderson,* 477 U.S. at 249.  The proper inquiry of

the court "is the threshold inquiry of determining whether there is the need for a

trial—whether, in other words, there are any genuine factual issues that properly

can be resolved only by a finder of fact because they may reasonably be resolved

in favor of either party." *Id.* at 250.

A party that moves for summary judgment on an issue for which he or she

bears the ultimate burden of proof faces a difficult road. *United States v. Donovan*,

661 F.3d 174, 185 (3d Cir. 2011).  "[I]t is inappropriate to grant summary

judgment in favor of a moving party who bears the burden of proof at trial unless a

reasonable juror would be compelled to find its way on the facts needed to rule in

its favor on the law." *El v. Se. Pa. Transp. Auth.,* 479 F.3d 232, 238 (3d Cir. 2007)

(footnote omitted).  A party who has the burden of proof must persuade the

factfinder that his propositions of fact are true, and "if there is a chance that a

reasonable factfinder would not accept a moving party's necessary propositions of

fact, pre-trial judgment cannot be granted." *Id*.  "Specious objections will not, of

course, defeat a motion for summary judgment, but real questions about credibility,

gaps in the evidence, and doubts as to the sufficiency of the movant's proof, will."

*Id.*


### B.  Material Facts.

A party who seeks to resist a summary judgment motion must comply with

Local Rule 56.1, which specifically provides that "[s]tatements of material facts in

support of, or in opposition to, a motion shall include references to the parts of the

record that support the statements" and that "[a]ll material facts set forth in the

statement required to be served by the moving party will be deemed admitted

unless controverted by the statement required to be served by the opposing party."

Under this Rule, the failure to follow these instructions and appropriately challenge

the material facts tendered by the moving party means that those facts are deemed

admitted.  Further, a party opposing a motion for summary judgment may not "rely

merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins.*

*Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).  Rather, "[o]nce the

moving party has supplied sufficient affidavits in support of its motion, the

opposing party must respond by supplementing the record in some manner—whether by its own affidavits or otherwise—setting forth specific facts demonstrating that there is a genuinely disputed factual issue for trial." *Id.*

The defendants filed a statement of material facts (*doc. 25*) in support of their motion for summary judgment.  Conner has not responded to the defendants' statement of material facts as required by Local Rule 56.1.  Nor has he pointed to evidence in opposition to the defendants' statement of material fact as required by Local Rule 56.1.  Thus, we consider the properly supported facts set forth by the defendants to be undisputed for purposes of their summary judgment motion. Those undisputed facts regarding Conner's use of the administrative-remedy process are as follows.

Conner was housed at FPC Schuylkill from October 15, 2009 through June 24, 2013. *Doc. 25* at ¶18.  He filed a total of 22 administrative remedies during his incarceration with the Bureau of Prisons. *Id.* at ¶2.  Eleven of those concerned issues that arose while Conner was housed at FPC Schuylkill. *Id.* at ¶3.  All eleven involved the disciplinary process and incident reports that Conner was issued while housed at FPC Schuylkill, and none of them had any relation to the claims Conner asserts in his amended complaint. *Id.* at ¶4.  Conner has not filed any remedies concerning medical care or the treatment of his bladder cancer at FPC Schuylkill. *Id.* at ¶5.

10

## C. Discussion.

The defendants contend that they are entitled to summary judgment because Conner failed to exhaust available administrative remedies as to his claims against them. The Prison Litigation Reform Act requires a prisoner to exhaust available administrative remedies prior to filing an action challenging prison conditions. The Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007). "This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Id.* Thus, the benefits of the exhaustion requirement "include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Id.* at 219. While the exhaustion requirement serves to alert prison officials to a problem, "notice to those who might later be sued . . . has not been thought to be one of the leading purposes of the exhaustion requirement." *Id.*

11

In accordance with § 1997e(a), the exhaustion of available administrative remedies is mandatory, *Booth v. Churner*, 532 U.S. 731, 739 (2001), and the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is seeking. *Nyhuis v. Reno*, 204 F.3d 65, 75 (3d Cir. 2000). "[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial." *Id.* at 77. Failure to exhaust available administrative remedies is an affirmative defense. *Jones v. Bock,* 549 U.S. 199, 216 (2007). As such, the defendant has the burden of pleading and proving that the prisoner failed to exhaust administrative remedies. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

42 U.S.C. § 1997e(a) requires proper exhaustion. *Woodford v. Ngo,* 548 U.S. 81 (2006). In other words, it requires more than simple exhaustion, i.e., more than that there is no further process available to the prisoner within the grievance system. *Spruill v. Gillis*, 372 F.3d 218, 227-31 (3d Cir. 2004). Section 1997e(a) requires that a prisoner follow the procedural requirements set forth in the administrative remedy process that is available to him. *Id.* at 231. The prison grievance procedures supply the yardstick for measuring whether exhaustion was

proper. *Id. See also Jones,* 549 U.S. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

"Under the PLRA, exhaustion is a precondition for bringing suit under § 1983." *Small v. Camden Cnty.*, 728 F.3d 265, 269 (3d Cir. 2013). It is a "'threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time.'" *Id.* at 270 (emphasis in original)(quoting *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010)). There is no right to have a jury decide the issue of exhaustion. *Id.* at 271. Rather, "exhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." *Id.* at 269.

A multi-tier administrative-remedy process is available to federal prisoners. In order for a federal prisoner to exhaust administrative remedies, he must comply with the prison administrative-remedy process set forth in the Code of Federal Regulations. Except for claims for which other administrative procedures have been established, federal inmates may seek "formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). Generally, an inmate must first present an issue of concern informally to staff before submitting an Administrative Remedy Request. 28 C.F.R. § 542.13(a). If the attempt at

informal resolution is not successful, an inmate must submit a written

Administrative Remedy Request to the institution staff member designated to

receive such requests within 20 days of the date on which the basis for the request

occurred. 28 C.F.R. § 542.14(a) & (c)(4).  The Warden has 20 days to respond to

the Administrative Remedy Request, and an inmate who is not satisfied with the

Warden's response may appeal to the Regional Director within 20 days of the

Warden's response. 28 C.F.R. § 542.15(a) & §542.18.  The Regional Director has

30 days to respond, and an inmate who is not satisfied with the Regional Director's

response may appeal to the General Counsel within 30 days of the Regional

Director's response. 28 C.F.R. § 542.15(a) & §542.18.  The General Counsel has

40 days to respond. 28 C.F.R. §542.18.  "Appeal to the General Counsel is the final

administrative appeal." 28 C.F.R. § 542.15(a).

   The time periods for an inmate to file an Administrative Remedy Request

and to file appeals to the Regional Director and to the General Counsel may be

extended when the inmate demonstrates a valid reason for delay. 28 C.F.R.

§§542.14(b) & 542.15(a).  Further, "[i]f the time period for response to a Request

or Appeal is insufficient to make an appropriate decision, the time for response

may be extended once by 20 days at the institution level, 30 days at the regional

level, or 20 days at the Central Office level." 28 C.F.R. § 542.18.  "If the inmate

does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id.*

Here, the defendants have presented evidence that Conner did not exhaust available administrative remedies as to his claims against them.  Although Conner alleges in his amended complaint that he exhausted administrative remedies, because he failed to respond to the defendants' motion, he has failed to present any evidence to support that assertion or to draw into dispute the defendants' evidence. The undisputed evidence establishes that Conner failed to exhaust available administrative remedies, and, thus, the defendants are entitled to summary judgment as to the claims against them in their individual capacities.[3]

## V.  Recommendations.

Accordingly, for the foregoing reasons, we recommend that the defendants' motion (doc. 21) to dismiss, or in the alternative, for summary judgment be granted.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

---

[3]  The defendants also assert that Conner's claims are barred by the statute of limitations and that certain of the defendants were not personally involved in the alleged events.  Because we have already concluded that the defendants are entitled to summary judgment on the basis that Conner failed to exhaust available administrative remedies, we need not address those assertions.

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 6th day of January, 2016.


                                    *S/Susan E. Schwab*
                                    Susan E. Schwab
                                    United States Magistrate Judge

16